COURT OF APPEALS OF VIRGINIA


Present:   Judges Haley, Beales and Alston
Argued at Alexandria, Virginia


KYLE AUGUST DAWSON

MEMORANDUM OPINION[*] BY
v.        Record No. 0220-11-4                     JUDGE ROSSIE D. ALSTON, JR.
                                                    DECEMBER 28, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Rebecca Wade, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Josephine F. Whalen, Assistant Attorney General II (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Kyle Dawson appeals his conviction for leaving the scene of an accident in violation of

Code § 46.2-894.  On appeal, Dawson argues that the trial court erred in refusing to specifically

instruct the jury on the definition of proximate cause when the jury was otherwise instructed that

it needed to consider whether Dawson was the proximate cause of the accident.  We assume

without deciding that the trial court erred in refusing to give Dawson's proposed instruction on

the definition of proximate cause, but we find that such error was harmless.  Accordingly, we

affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

On July 19, 2009, Sara Ann Kozosky went for a motorcycle ride with her friend. Prior to that date, Kozosky had been riding motorcycles for three years, on and off. She had ridden a motorcycle about fifteen times previously and always rode with another motorcyclist because she felt it was dangerous to ride alone. During her ride that day, Kozosky was headed westbound on Route 55. When she approached the intersection near Whiting Road, the road curved to the left. Kozosky was riding about sixty to seventy feet behind her motorcycling companion and saw a car coming around the corner very fast and on two wheels. The car was in her lane and heading towards her, so she decided to try to get her motorcycle off of the road. As she did so, her motorcycle hit a patch of gravel and locked up, and she was thrown over the motorcycle's handlebars. She landed facing the opposite way, was eventually able to get up on all fours, looked up, and saw a blue car facing her. She later identified Dawson as the blue car's driver. After the accident, a passing motorist came to Kozosky's aid and called 911. Kozosky received treatment for a broken pelvis bone and thumb and tendon issues.

Later on the day of the accident, the Fauquier County Sheriff's Office dispatched Officer King to investigate the scene of the accident. King noticed "yaw" marks on the side of the road opposite to where Kozosky had crashed. King also observed that there was a broken mailbox on that same side of the road, with the top portion of the mailbox thirty to forty feet away from its post in the owner's yard.

Through subsequent investigation, attention was focused on Dawson as being involved in the accident. On July 23, 2009, Dawson voluntarily came to the police station to speak with

_____

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

King. King reviewed Dawson's <u>Miranda</u> rights with him, and Dawson agreed to the interview with King. Dawson told King that he was traveling eastbound on Route 55 at about sixty miles per hour. He also stated that as he approached the curve at Whiting Road, Dawson saw two motorcyclists in the oncoming lane and was unable to keep his vehicle in his lane, so he turned the wheel very hard to his right, skidded, did "a 360" and came to a stop. Dawson told King that he looked around and did not believe that he had hit anyone, so he decided to leave. After arriving at his destination, the house of his girlfriend, Ashley Randolph, Dawson noticed the damage to his car from his collision with the mailbox. Dawson told King that he planned to go back and pay for the mailbox when he had the money to do so. King arrested Dawson that same day on a warrant for violating Code § 46.2-894, leaving the scene of an accident.

On June 25, 2010, Dawson was tried before a jury. Both King and Kozosky testified for the Commonwealth regarding the events as described above. The Commonwealth introduced pictures of Dawson's car showing damage on the left front panel with paint transfer from the mailbox. The vehicle also had damage to the hood, which King testified he believed the mailbox caused.

In his own defense, Dawson testified that he was running late to his destination and was speeding on the day of the accident, even though he knew the brakes of his car were not working properly. He admitted that as he came to a curve in the road, he was going a little fast and applied the brakes, but the brakes would not respond. Dawson stated that he began to drift into the oncoming lane and saw two motorcyclists coming toward him, so he jerked the wheel to the right to get out of the lane causing the car to do "two 360's" before coming to a stop. Dawson asserted that he was in the oncoming lane only for a split second and thought he had gotten back into his lane in enough time to avoid a collision with either of the motorcyclists, stating that he

- 3 -

remembered seeing the motorcyclists pass by him. According to Dawson, he had no reason to believe that anyone else was involved in the accident.

Dawson further stated that after his car came to a stop, he pumped the brakes. The brakes responded, so he decided to continue on to Randolph's house at a slow pace to get the car off of the road. Dawson and Randolph both testified that they returned to the scene of the accident after Randolph pointed out the damage to Dawson's car. It was then, according to Dawson, that he concluded that he must have hit something. Both Dawson and Randolph testified that upon their return to the scene, they saw the damaged mailbox, but did not see Kozosky, the police, or the ambulance that eventually transported Kozosky to the hospital. Dawson testified consistently with his statement to King that he intended to pay for the mailbox when he received his next paycheck.

At the conclusion of the evidence, the trial court heard the parties' arguments on jury instructions. Dawson offered Instruction No. I, stating: "A proximate cause of an accident, injury, or damage is a cause which in natural and continuous sequence produces the accident, injury, or damage. It is a cause without which the accident, injury or damage would not have occurred." The Commonwealth objected to this instruction arguing that it was an instruction used more commonly in civil cases. The trial court agreed and denied Instruction No. I along with other proposed instructions not relevant to this appeal.

The trial court then instructed the jury on the elements of the offense of leaving the scene of an accident. The trial court instructed the jury that the Commonwealth was required to prove beyond a reasonable doubt that Dawson was the driver of a vehicle which he knew was involved in an accident, that the accident caused personal injury to another, that Dawson knew or should have known that another person was injured, and that he failed to stop and render assistance or provide identifying information. The trial court further instructed the jury that to prove Dawson

was involved in an accident, the Commonwealth needed to prove either physical contact between Dawson's car and another vehicle, person, or object, or that Dawson was "a proximate cause of the accident."[2]

The jury convicted Dawson of leaving the scene of an accident in violation of Code § 46.2-894. The trial court sentenced Dawson to one year in prison. This appeal followed.

ANALYSIS

Because we assume without deciding that the trial court erred in refusing Dawson's proposed jury instruction on the definition of proximate cause, we analyze only whether this supposed error was harmless.

In determining whether a trial court's error was harmless, this Court looks to whether the defendant received "a fair trial on the merits and substantial justice [was] reached." Timmons v. Commonwealth, 15 Va. App. 196, 199, 421 S.E.2d 894, 896 (1992). If a trial error has affected the verdict, then it cannot be considered harmless and is therefore reversible error. See id. Even when non-constitutional error is involved, this Court must reverse a criminal conviction unless

> "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

Lavinder v. Commonwealth, 12 Va. App. 1003, 1006, 407 S.E.2d 910, 911 (1991) (*en banc*) (quoting Code § 8.01-678).

Dawson contends that refusing Instruction No. I constitutes reversible error because it would have given the jury a much clearer understanding of the circumstances necessary to

---

[2] Specifically, the instruction read: "The driver of a vehicle has been involved in an accident if: (a) There has been physical contact between the driver's vehicle and another vehicle, person or object; or (b) the driver of the vehicle was a proximate cause of the accident."

convict him. Specifically, Dawson states that the instruction would have required the jury to consider the following factors: 1) Kozosky's skill as a motorcyclist; 2) the presence of gravel on the side of the road; 3) the amount of time Dawson was actually on the wrong side of the road; 4) the distance between Kozosky and Dawson when Dawson was on the wrong side of the road; 5) Dawson's testimony that he saw both motorcycles go by him; and 6) the fact that a motorcyclist seventy feet in front of Kozosky was able to avoid a collision without injury.

The Commonwealth contends that the exclusion of the proximate cause instruction was harmless because the evidence overwhelmingly proved that Dawson was a proximate cause of Kozosky's accident.

Initially, we note that Dawson's argument assumes that Code § 46.2-894 required the Commonwealth to prove that he was *the* proximate cause of Kozosky's accident, as opposed to *a* proximate cause. As noted above, Code § 46.2-894 requires the Commonwealth to prove, *inter alia*, that Dawson was involved in an accident. To prove that Dawson was "involved in an accident," the Commonwealth needed to produce proof of either physical contact between Dawson's vehicle and another vehicle, person or object, *or*, that Dawson was "*a* proximate cause of the accident." Robinson v. Commonwealth, 274 Va. 45, 53, 645 S.E.2d 470, 474 (2007) (emphasis added) (Because Dawson's vehicle did not come into physical contact with Kozosky's vehicle, he could only have been found guilty if he was deemed a proximate cause of the accident). Therefore, this Court's task is to simply evaluate the evidence to determine whether it was sufficient to support the jury's conviction notwithstanding the trial court's failure to instruct the jury on the precise definition of proximate cause, as Dawson requested. [3]

---

[3] Because Dawson did not assign error before this Court to the trial court's refusal to instruct the jury on superseding and intervening causes, those instructions are not before us, and we decline to address arguments made on brief about them. See Rule 5A:20(c).

By detailed reference to the definition of proximate cause through an instruction, the jury would have been apprised that proximate cause connotes "a cause which in natural and continuous sequence produces the accident, injury, or damage. It is a cause without which the accident, injury or damage would not have occurred." From the evidence presented, the jury could have reasonably viewed the entire series of events as "the accident." As we have stated, "there is nothing inherent in the meaning of the word 'accident' that suggests that it applies only when a vehicle strikes or collides with a person or property." Smith v. Commonwealth, 8 Va. App. 109, 114, 379 S.E.2d 374, 377 (1989) (decided under former Code § 46.1-176). In addition, the jury could have reasonably found that "the accident" included Dawson's crossing into Kozosky's lane, which in turn forced her off the road where the gravel caused her to crash. That being considered, it naturally follows that the jury could have reasonably concluded that had Dawson not crossed into Kozosky's lane, she would not have been forced off the road; and had she not been forced off the road, she would not have hit the gravel that led to her being thrown from the motorcycle and injuring herself. This analysis would fit precisely within Instruction No. I's definition, as Dawson's crossing into Kozosky's lane would be considered "a cause which in natural and continuous sequence produces the accident, injury, or damage."

Moreover, the jury had ample evidence to rely upon in determining that the Commonwealth met its burden in proving the remaining elements under Code § 46.2-894: that the accident caused personal injury to another, Dawson knew or should have known that another person was injured, he failed to stop and provide identifying information, and failed to render reasonable assistance to an injured person. Kozosky testified to her injuries as referenced, and Dawson did not contest that she suffered some injury. Dawson conceded that he had seen Kozosky, knew he was in her lane when his brakes failed, and his car did either one or two "360's." Dawson also testified that he did not immediately stop and report his name, address,

driver's license and vehicle registration numbers to the State Police, local law-enforcement agency, or Kozosky. He similarly admitted that he did not render reasonable assistance to Kozosky but continued driving after testing out his brakes. Therefore, the Commonwealth presented sufficient evidence for the jury to conclude that Dawson's actions constituted a violation of Code § 46.2-894,[4] and the trial court's refusal to give Instruction No. I, even if in error, was harmless.

## CONCLUSION

Accordingly, we find that the trial court's refusal to instruct the jury on proximate cause did not affect the verdict and affirm Dawson's conviction.

Affirmed.

---

[4] Because of the conclusion we reach, we need not address the significance of the conceded physical contact between Dawson's car and another *object* (the mailbox).