# COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Ortiz and Causey
Argued at Lexington, Virginia

XAVIER ANTONIO GILBERT

                                                   MEMORANDUM OPINION[*] BY

v.       Record No. 0959-21-3           JUDGE DORIS HENDERSON CAUSEY
                                                MAY 30, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

Heath L. Sabin (Sabin Law Office, PC, on brief), for appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a bench trial, Xavier Antonio Gilbert, appellant, was convicted of three counts each of robbery, conspiracy to commit robbery, grand larceny, and abduction, as well as single counts of armed burglary, possessing a firearm after a violent felony conviction, and using a firearm in the commission of a felony. The trial court sentenced Gilbert to a total of 263 years of imprisonment with 230 years suspended. Gilbert argues that the trial court erred in denying his motion to suppress his statements to the police, contending that the police subjected him to custodial interrogation without the benefit of warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). He challenges the sufficiency of the evidence to sustain his convictions. Additionally, Gilbert asserts that the trial court abused its discretion in imposing an active sentence of 33 years of imprisonment. We hold that the trial court did not err and affirm the judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND[1]

On the evening of July 8, 2019, Kelli Sparks invited three friends, Ivan Barlow, Amanda Denny, and Timothy Simpkins, to her Martinsville home. Ryan Ward, who Sparks did not know "really well," arrived around midnight. Sparks first noticed Ward "visiting" as she stepped out to the porch to speak with Barlow. Ward said he wanted to use the bathroom but wanted to go in the backyard. Sparks thought the request was strange and said he could use the bathroom inside her house.

Within minutes of Ward coming inside, four men barged through the front door. Their faces and heads were covered, and at least two of them were armed with guns.[2] The men charged down the hallway toward the dining room where Sparks was standing. One or two of the assailants grabbed Sparks, pushed her to the floor, and pointed a gun at her. The other assailants brought Barlow, Denny, Simpkins, and Ward into the dining room and ordered them to "get down and face the wall." When one of the assailants demanded that Ward identify the person who lived in the house, he pointed to Sparks. One of the gunmen forced Sparks at gunpoint down the hallway and demanded she tell him the location of her safe. He "pistol-whipped" her in the head and face two or three times after she denied having a safe. Sparks sustained bruising and lost a tooth as a result of the blows.

Sparks's assailant forced her upstairs at gunpoint, and the other assailants followed. The men again demanded the location of the safe from Sparks. When Sparks said she did not have a

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any of Gilbert's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

[2] Two of the men wore ski masks, one covered his face with his shirt, and the other used a bandana to conceal his identity.

safe, she was hit in the head with a gun two or three times. The man who had been holding her at gunpoint stuck a handgun inside her mouth. The men ransacked two bedrooms upstairs but did not find a safe. They then brought Sparks downstairs to join the other victims being held at gunpoint in the dining room by the other assailants.

One of the gunmen pulled Sparks aside. He hit her once with a handgun that had "a lot of metal." The assailants appeared to be "increasingly angry" because they had not found a safe, money, or guns. To appease them, Sparks said that her wallet, with money inside, was in her car. The gunman took Sparks's car keys and tossed them to one of the other men. Sparks later paid about $300 to replace her car keys.

Sparks testified that the assailants "gathered everybody's cell phones" before they left the premises. Sparks's cell phone, worth about $80 or $90, had been in her pocket. The assailants took Barlow's bookbag, class ring from his hand, and wallet from his pocket. Barlow's ring was worth $299, and his wallet contained $15. An assailant removed Simpkins's wedding band from his hand.

Barlow had hidden his cell phone in the living room when the assailants first arrived. He called the police after waiting several minutes and ensuring that the assailants were gone. When officers arrived at the scene, they noted that Ward, who had not left with the assailants, appeared calm; Sparks, Barlow, Denny, and Simpkins were trembling and shaking.

Sparks and Barlow were unable to identity their assailants,[3] but they told the police that during the incident one of the men had referred to another member of the group as "Xavier," who responded, "Don't say my name." With this information, the police developed Gilbert as a possible suspect, as he was the only person having the first name "Xavier" known to law

_____

[3] Denny and Simpkins declined to speak with the police about the incident and did not testify at trial.

enforcement. After learning Gilbert was on probation, Martinsville Police Sergeant R.L. Ratcliffe, the lead investigator on the case, arranged with Gilbert's probation officer to meet with Gilbert at the probation office on July 17, 2019.

The office in which they met was small and contained a desk, desk chair, and two other chairs for visitors. Gilbert, who was unrestrained, occupied a chair across from the desk and close to the door, which was shut but not locked. Sergeant Ratcliffe sat at the desk and Lieutenant Sandy Hines sat in the other chair beside Gilbert. Both officers were in plain clothes but displayed their badges and visible firearms. The thirty-minute interview was audio recorded.[4]

At the outset, Ratcliffe stressed to Gilbert that there were no charges pending against him, he was not under arrest, and he was free to leave. Although probation officers typically escorted visitors out of the building, no code was needed to pass through the security door when leaving. Ratcliffe told Gilbert that he would be allowed to leave afterward with whomever had transported him to the probation office. Ratcliffe said that the interview was Gilbert's opportunity to speak to the police and possibly receive a benefit for cooperating.

Although he initially denied any involvement in the crimes at Sparks's home, Gilbert "changed his story" when Ratcliffe mentioned the names of other people involved. Gilbert described his involvement in the incident but said that he did not know the names of all the participants. Gilbert said that Ward and another man had led him to believe that there was a significant amount of valuable property at a residence and that a "hit" there would be "easy." The men planned for Ward to "scope out" the home and gain entry through the ruse of needing the bathroom, then the others would enter through an unlocked door. Gilbert admitted that he

---

[4] The recording was played at the motion to suppress hearing. The recording was not played again at the trial, but Ratcliffe recounted the details of the interview and the statements Gilbert had made.

was third in the line of four intruders who entered the home. Gilbert said that he was not armed but others with him had guns. He said that he heard someone hitting Sparks. After the assailants fled the scene, they went to a location in Henry County to split the proceeds, but they had not obtained anything of significant value, and Gilbert received nothing.

Gilbert left the probation office after his conversation with the police officers ended, and Ratcliffe obtained warrants for Gilbert's arrest. Gilbert subsequently absconded and was arrested several weeks later.

Gilbert moved to suppress his statements to the police, arguing that he should have been given *Miranda* warnings because he was in custody. At the suppression hearing, Gilbert testified that he had been told he was free to leave but did not feel free to leave and thought talking to the police would help him. He admitted having prior experience with the police and said that he was familiar with the probation office from his prior visits there. The trial court found that Gilbert was not in custody at the time of the interview and denied the motion to suppress his statements. The trial court subsequently convicted Gilbert of the charged offenses. This appeal follows.

ANALYSIS

I. Motion to Suppress

Gilbert contends that the trial court erred in denying his motion to suppress statements he gave to officers while in police custody. He insists that the statements were not admissible because the police failed to advise of him of his *Miranda* rights before interrogating him. In considering this question, "we view the evidence in the light most favorable to the Commonwealth, the party prevailing below." *Aldridge v. Commonwealth*, 44 Va. App. 618, 638 (2004). Moreover, "the burden is upon [the appellant] to show that the ruling [upon the motion to suppress] . . . constituted reversible error." *Id.* (first and third alterations in original) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 197 (1997) (en banc)).

"Where an accused in a criminal case is subjected to custodial police interrogation, he first must be advised of his Fifth Amendment rights as defined in *Miranda* . . . for any statement he makes to be admissible in evidence." *Commonwealth v. Thornton*, 24 Va. App. 478, 488 (1997). Statements obtained during custodial interrogation without *Miranda* warnings "generally will be subject to exclusion for most proof purposes in a criminal trial." *Anderson v. Commonwealth*, 279 Va. 85, 91 (2010) (quoting *Dixon v. Commonwealth*, 270 Va. 34, 39 (2005)). "Whether the circumstances of [a police interview] were such as to require *Miranda* warnings is a mixed question of law and fact." *Keepers v.* Commonwealth, 72 Va. App. 17, 33 (2020) (alteration in original) (quoting *Spinner v. Commonwealth*, 297 Va. 384, 392 (2019)). "Appellate courts 'review such questions *de novo* but defer to the fact-finder's findings of historical fact unless they are plainly wrong or without evidence to support them.'" *Id.* (quoting *Spinner*, 297 Va. at 392).

"'[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question,' and *Miranda* warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" *Harris v. Commonwealth*, 27 Va. App. 554, 564 (1998) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). "Whether a suspect is 'in custody' under *Miranda* is determined by the circumstances of each case, and 'the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with formal arrest.'" *Ford v. Commonwealth*, 28 Va. App. 249, 256 (1998) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

Evaluating whether a detention is "custodial" under *Miranda* requires consideration of many factors, including "whether the police used physical restraints, displayed their weapons, engaged in physical contact, or told the suspect he was free to leave." *Keepers*, 72 Va. App. at 34. "The number of officers present and whether the police 'engaged in other incidents of

formal arrest such as booking' are also probative of custodial status." *Id.* (quoting

*Alvarez-Saucedo v. Commonwealth*, 71 Va. App. 31, 41 (2019)). "Further, courts may consider

'the extent to which the officers' beliefs concerning the potential culpability of the individual

being questioned were manifested to the individual.'" *Id.* at 35 (quoting *Harris*, 27 Va. App. at

565). Nonetheless, "[n]o single factor is dispositive of the issue." *Id.* (quoting *Aldridge*, 44

Va. App. at 642).

"[I]t is the custodial nature *rather than the location of the interrogation* that triggers the

necessity for giving *Miranda* warnings." *Aldridge*, 44 Va. App. at 643 (quoting *Coleman v.*

*Commonwealth*, 226 Va. 31, 47 (1983)). In addition, "the release of the interviewee at the end of

the questioning" is a relevant consideration in determining whether a person is in custody for

purposes of *Miranda*. *Howes v. Fields*, 565 U.S. 499, 509 (2012).

Considering these facts and circumstances, the record supports the trial court's

conclusion that Gilbert was not in custody when the police interviewed him. Gilbert voluntarily

appeared at the probation office, which he had visited before, to meet with his probation officer.

Although Gilbert may not have expected to see Sergeant Ratcliffe and Lieutenant Hines at the

office, the officers did not present themselves in a threatening manner. Ratcliffe repeatedly

assured Gilbert that he was free to go at any time, was not under arrest, and would be permitted

to go home that day regardless of what he said to the police. Ratcliffe explained that he was

giving Gilbert the opportunity to explain his involvement in the incident. Gilbert was not

restrained and could have left the office at any time. Nonetheless, he remained in the office with

the police officers and answered their questions, never indicating that he wished the questioning

to stop. Significantly, at the end of the thirty-minute interview, Gilbert left the probation office

voluntarily, just as he had come. Under these facts, a reasonable person in Gilbert's position

would have believed he was not restricted in a manner associated with formal arrest, so *Miranda*

warnings were not required for his statements to be admissible.  Thus, the trial court did not err in denying the motion to suppress.

## II.  Sufficiency of the Evidence[5]

### A.  Standard of Review

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

### B.  Possession of a Firearm after Conviction for Violent Felony

Under Code § 18.2-308.2(A), it is unlawful "for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm . . . ."  Gilbert argues that the evidence was insufficient to prove that a weapon that was used in the incident was a "firearm" for purposes of Code § 18.2-308.2.[6]  Gilbert asserts that no

---

[5] We note that for each charge, Gilbert was present with his co-conspirators and thus liable for all their actions.  *See Spradlin v. Commonwealth*, 195 Va. 523, 527 (1954) ("Every person who is present lending countenance, aiding or abetting another in the commission of an offense is liable to the same punishment as if he had actually committed the offense.").

[6] Gilbert initially also challenged the Commonwealth's proof that he had a prior conviction for a violent felony, but he withdrew this portion of the assignment of error.
Within his argument on this issue, Gilbert challenges the sufficiency of the evidence to prove that he possessed a firearm.  This argument is not encompassed within his stated

weapon was recovered and that neither Sparks nor Barlow described in detail any gun used by the assailants. Assuming, without deciding, that this argument was preserved under Rule 5A:18,[7] we hold that the trial court did not err in finding the evidence sufficient to prove that a weapon that was used in the incident was a "firearm" under the relevant statute.

Although Code § 18.2-308.2 does not define the term "firearm," the Supreme Court of Virginia has held that a firearm, for purposes of that statute, is "any instrument designed, made, and intended to fire or expel a projectile by means of an explosion." *Jordan v. Commonwealth*, 286 Va. 153, 157 (2013) (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 583 (2002)). The Court further concluded that the definition does not require "any element of present capacity or operability." *Id*. Whether an object is a firearm under Code § 18.2-308.2, like any element of a crime, "may be proved by any direct or circumstantial evidence, as long as the evidence as a whole is sufficiently convincing to exclude all reasonable hypotheses of innocence." *Boone v. Commonwealth*, 63 Va. App. 383, 393 (2014). The firearm does not need to be introduced into evidence. *See Jordan*, 286 Va. at 156. Evidence, such as a witness's testimony that the defendant possessed what appeared to be a firearm, along with the defendant's use of the item to force persons to comply with his commands, implying that if they did not, they risked being shot, is sufficient to prove that the defendant possessed a firearm. *Id.* at 158-59.

Here, the evidence shows that when the assailants entered Sparks's home, they threatened the occupants with guns and held Barlow, Denny, and Simpkins in the dining room. One of the

---

assignment of error. "Only assignments of error listed in the brief will be noticed by this Court." Rule 5A:20(c)(1). "This Court is limited to reviewing the assignments of error presented by the litigant." *Banks*, 67 Va. App. at 289. "[W]e do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error." *Id.* at 290. Therefore, we do not consider this aspect of Gilbert's argument. *See* Rule 5A:20(c)(1).

[7] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

assailants beat Sparks with a gun, ordered her upstairs, and demanded to know the location of her safe. While holding Sparks at gunpoint, the assailant stuck the gun in her mouth. Sparks described the weapon as a "handgun" with "a lot of metal." This evidence is sufficient to establish that the assailants used a firearm in the incident.

## C. Robbery

"Robbery at common law is defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" *Commonwealth v. Anderson*, 278 Va. 419, 424 (2009) (quoting *Durham v. Commonwealth*, 214 Va. 166, 168 (1973)). Relying on a portion of Sparks's testimony that she thought the robbers took a cell phone "from Ryan or maybe [Denny] or Tim," Gilbert argues the evidence did not prove that he or those with whom he acted in concert took anything from Denny.

However, Sparks also testified that the robbers "gathered everybody's cell phones, including hers," and that she saw them take cell phones from her friends. Gilbert admitted to the police that he was one of the intruders who forced their way into Sparks's home with the purpose of stealing valuable property. The trial court, as the finder of fact, was "required 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Tomlin v. Commonwealth*, 74 Va. App. 392, 402 (2022) (quoting *Brown v. Commonwealth*, 68 Va. App. 44, 55 (2017)). Upon the evidence, a reasonable finder of fact could conclude beyond a reasonable doubt that the assailants stole Denny's cell phone during the incident and that Gilbert thus was guilty of robbing her.

Gilbert also contends that the evidence did not prove he robbed Sparks and Barlow because they did not specifically identify him as one of the assailants, but he did not make this same argument at trial. Thus, this point is waived by Rule 5A:18. Gilbert does not ask this

Court to invoke the good cause or ends of justice exceptions to Rule 5A:18 on this issue, and the Court will not apply the exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

## D. Conspiracy

Gilbert challenges the sufficiency of the evidence to sustain his convictions for conspiracy to commit robbery. "To prove a conspiracy, the Commonwealth must offer evidence of 'an agreement between two or more persons by some concerted action to commit an offense.'" *James v. Commonwealth*, 53 Va. App. 671, 677-78 (2009) (quoting *Wright v. Commonwealth*, 224 Va. 502, 506 (1982)). "It is a rare case where any 'formal agreement among alleged conspirators' can be established." *Id.* at 678 (quoting *Wilder Enter. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1141 (4th Cir. 1980)). Thus, "[t]he existence of a conspiracy may be proven by circumstantial evidence." *Chambliss v. Commonwealth*, 62 Va. App. 459, 466-67 (2013). Because conspirators often perform different roles in pursuit of their criminal plan, where the Commonwealth proves that the conspirators "by their acts *pursued the same object*, one performing *one part* and the others performing *another part* so as to complete it or with a view to its attainment, the [factfinder] will be justified in concluding that they were engaged in a conspiracy to effect that object." *James*, 53 Va. App. at 678 (alteration in original) (quoting *Charity v. Commonwealth*, 49 Va. App. 581, 586 (2007)).

In this case, Gilbert admitted to the police that he, Ward, and others planned for the armed men to enter Sparks's house and steal property there after Ward entered the house by a ruse. Although the gunmen in the group had their faces covered, they executed their plan just as they agreed beforehand but did not find the valuables they expected. During the incident, one of the assailants called another by the name "Xavier," which is Gilbert's first name. Upon these facts and circumstances, a reasonable finder of fact could conclude beyond a reasonable doubt

that Gilbert agreed with others to commit robbery in Sparks's home and that he was guilty of the conspiracy offenses.

Gilbert also argues that the Commonwealth did not prove that he conspired to rob Sparks, Denny, and Barlow specifically, as charged in the indictments. Gilbert failed to preserve this issue for appellate review because he did not raise it in the trial court. *See* Rule 5A:18. In light of Gilbert's admission that he agreed with others to commit robbery in the house, we find no basis to invoke the ends of justice exception here.

### E. Grand Larceny

Gilbert was convicted of grand larceny of Sparks, Barlow, and Denny in violation of Code § 18.2-95(i), the wrongful taking of property with a value of five dollars or more from the person of another. At trial, Gilbert's argument concerning the grand larceny charges was limited to the issue of whether the Commonwealth proved a taking of property from Denny. For the same reasons stated above concerning the charge of robbery of Denny, a reasonable finder of fact could conclude beyond a reasonable doubt that Gilbert or someone with whom he acted in concert took property from Denny and, thus, Gilbert was guilty of grand larceny.[8]

### F. Abduction

Gilbert contends the evidence was insufficient to sustain his convictions for abducting Sparks, Barlow, and Denny. Under Code § 18.2-47(A), anyone who "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty" is guilty of abduction.

---

[8] To the extent that Gilbert raises other challenges on appeal to the grand larceny convictions, we do not consider them. He did not raise these issues at trial, *see* Rule 5A:18, and we find no reason to invoke either exception to the contemporaneous objection rule in this instance. The evidence proved that the assailants took car keys and a cell phone from Sparks's person and stole the wallet and ring that Barlow had in his possession.

At trial, Gilbert did not challenge the abduction charges for Sparks and Barlow.  Thus, he has waived that portion of his argument, and we find no basis to apply the ends of justice exception.  Rule 5A:18.  Even though Denny did not testify at trial, Sparks and Barlow both testified that the gunmen burst into the home and gathered the occupants of the house, which included Sparks, Barlow, Denny, and Simpkins, into the dining room.[9]  An assailant pistol-whipped Sparks and forced her upstairs in search of a safe while some of the other gunmen held the other victims at gunpoint against the wall of the dining room.  After returning Sparks downstairs, the assailants took personal property from her, Barlow, Denny, and Simpkins.  Accordingly, a reasonable finder of fact could conclude beyond a reasonable doubt that Gilbert and the other assailants detained the victims against their will and that Gilbert was guilty of three counts of abduction.[10]

## G.  Armed Burglary and Felonious Use of a Firearm

In the trial court, Gilbert did not contest the sufficiency of the evidence to sustain his convictions for armed burglary and using a firearm in the commission of a felony.  As a result, Gilbert failed to preserve any challenge to these convictions for appellate review.  Rule 5A:18.  Nonetheless, Gilbert maintains on appeal that, in the event his statements to the police should have been suppressed, this Court should invoke the ends of justice exception concerning these

---

[9] The indictment intended to charge Gilbert with abduction of Simpkins erroneously named the wrong victim, and the trial court denied the Commonwealth's motion to amend the indictment on the day of trial.

[10] Gilbert contends that any detention of Barlow was inherent in, and incidental to, the robberies.  Yet again, Gilbert did not raise this issue in the trial court, and this question is procedurally barred.  *See* Rule 5A:18.  We refuse Gilbert's invitation to invoke the ends of justice exception as we find no affirmative "evidence of innocence or lack of a criminal offense." *Masika v. Commonwealth*, 63 Va. App. 330, 334 (2014) (concluding that when the inquiry "is whether 'manifest injustice' occurs when an accused is convicted of conduct excluded from the statute under which he was charged," "we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense").

convictions and consider whether the evidence sufficiently proved that he entered Sparks's home and acted in concert with perpetrators who used guns to accomplish robbery and other crimes.

We find Gilbert's argument unavailing, primarily because we have concluded above that the trial court did not err in denying the motion to suppress his statements to the police. Moreover, under Code § 19.2-324.1, when considering the sufficiency of the evidence on appeal, we consider all the evidence that was presented at trial, even if it was admitted erroneously. Therefore, we do not invoke an exception to Rule 5A:18 and will not consider Gilbert's arguments in this instance.

III.  Sentencing

The sentencing guidelines in appellant's case ranged from 16 years and 3 months to 28 years and 7 months.  Gilbert asked the trial court to sentence him at the low end of the guidelines, and the Commonwealth suggested an active sentence at the midpoint of the guidelines, which was 19 years and 8 months.  The trial court, noting that Gilbert had put the barrel of a pistol into Sparks's mouth, stated that Gilbert "deserve[d] more time than 28 years [and] 7 months."  The court imposed an active sentence of 33 years of incarceration.

Gilbert argues that the trial court's sentence was an abuse of discretion because it considered a factor not in evidence, namely that during the incident he placed a gun inside Sparks's mouth, and exceeded the guidelines.  "We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011).  "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

We hold that Gilbert has waived his argument regarding a factor not in evidence because he did not raise it in the trial court when the court imposed sentence.[11] Rule 5A:18. Gilbert has not asked that we apply either exception to Rule 5A:18, and we will not do so sua sponte. *See Edwards*, 41 Va. App. at 761.

We conclude that the trial court did not err in imposing an active sentence above the sentencing guidelines. "The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). "[T]he recommended sentencing ranges contained in these discretionary guidelines are not binding on the trial judge but, rather, are mere tools to be used by the judge in fixing an appropriate sentence within the limitations established by the statute governing punishment for the particular crime." *Luttrell v. Commonwealth*, 42 Va. App. 461, 465 (2004). A judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Accordingly, we may only consider whether the sentence fell outside the permissible statutory range. *See Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994).

The aggregate sentence the trial court imposed was within the ranges set by the legislature for Gilbert's crimes. *See* Code §§ 18.2-22, 18.2-47, 18.2-53.1, 18.2-58, 18.2-90, 18.2-308.2. Additionally, eight years of the active sentence was the mandatory minimum punishment. *See* Code §§ 18.2-53.1, 18.2-308.2. Accordingly, the trial court did not abuse its discretion in sentencing Gilbert.

---

[11] Further, the record shows that Sparks testified that one of her assailants stuck a handgun in her mouth. Gilbert was present with his co-conspirators and thus liable for all their actions and could be punished accordingly. *See Spradlin*, 195 Va. at 527 ("Every person who is present lending countenance, aiding or abetting another in the commission of an offense is liable to the same punishment as if he had actually committed the offense.").

CONCLUSION

For the foregoing reasons, we hold that the trial court did not commit reversible error and affirm the judgment.

*Affirmed.*