### Richmond

HENRY LEE TIMMONS

v.

COMMONWEALTH OF VIRGINIA

No. 1763-90-2

Decided September 29, 1992

COUNSEL

C. David Whaley (Anthony G. Spencer; Morchower, Luxton & Whaley, on brief), for appellant.

Kathleen B. Martin, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—Henry Lee Timmons, appellant, appeals from his jury conviction for possession of a firearm while in possession of cocaine, in violation of Code § 18.2-308.4.[1] Timmons contends that his conviction should be reversed because the pistol he is charged with possessing lacked a clip or magazine and was, therefore, inoperable when seized. On appeal, we must decide whether the trial court properly instructed the jury that a firearm appearing to have the capability of being fired, even if it does not have that capability, is nonetheless a "firearm" within the meaning of Code § 18.2-308.4. For the reasons that follow, we hold that the trial court's instruction to the jury was erroneous, but that the error was harmless. Accordingly, we affirm

---

[1] Timmons also challenged his convictions for possession of marijuana with the intent to distribute and possession of cocaine. However, his petition for appeal was denied with respect to those issues.

Timmons' conviction for possession of a firearm while in possession of cocaine.

On April 19, 1990, officers from the Richmond Bureau of Police executed a search warrant at 802-B West Clay Street, a second floor apartment where Timmons resided. As Officers Provost and Russell entered the apartment, they saw Timmons run down the hallway toward the kitchen with a blue duffle bag in his hand. Officer Russell heard glass breaking. Detective Farmer, who was standing outside the back of the apartment, saw someone inside throw a blue bag out the window. The bag, which landed on a neighbor's porch, contained numerous smaller bags of marijuana.

Officer Russell arrested Timmons inside the apartment and discovered $385 in cash and some marijuana in his pockets. Timmons' hand was cut. Although Timmons denied that drugs were in the apartment, the officers found .28 grams of cocaine and a partially burnt, hand-rolled marijuana cigarette on the dresser in Timmons' bedroom. The police also discovered a .32 caliber semi-automatic pistol in the bedroom. The pistol was found in the bottom drawer of the dresser; the drawer front had been removed so that the drawer resembled a shelf. A box of .32 caliber ammunition containing forty-three bullets was also found in the dresser drawer.

The pistol was missing the clip or magazine, and the clip was not found in the apartment.[2] At trial, Timmons admitted the pistol was his, but testified that he did not believe the pistol was operable because it did not have a clip. He also stated that he had not fired the pistol in the four years that he had owned it. Detective Venuti testified that he fired the pistol at the police academy range.

Timmons contends that the pistol discovered in his apartment is not a "firearm," as contemplated by Code § 18.2-308.4, because the absence of the clip rendered the pistol inoperable at the time it was seized. Thus, Timmons alleges that the trial court erred in instructing the jury that "[a] firearm is any object which gives the appearance of having the capability of firing a projectile. It is not necessary that the object actually have the capability of firing a projectile."

■ The sole issue raised in this appeal is whether the trial court properly instructed the jury regarding the definition of a "firearm" for

---

[2] Officer Venuti testified that "[t]he magazine or the clip is what the actual bullets are loaded into, and the magazine or clip is inserted into the gun."

purposes of Code § 18.2-308.4. We begin our analysis by recognizing that Code § 18.2-308.4 does not define the term "firearm." Therefore, we turn to principles of appellate review to guide our resolution of this issue. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.' " *Darnell v. Commonwealth*, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting *Swisher v. Swisher*, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the 'essentials of a fair trial.' " *Id.* (quoting *Dowdy v. Commonwealth*, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979)).

The jury instruction at issue here permitted the jury to find that "any object" that appears to have the capability of firing a projectile is a "firearm" within the meaning of the statute. Based on this language, any object that appeared to be capable of firing a projectile, even if it lacked that capability, would fall within the purview of the statute. However, we find no authority for the proposition that "any object," whether that object is an actual weapon or merely a toy, is a "firearm" under Code § 18.2-308.4 so long as it appears to have the capability of being fired. Therefore, to the extent that the language of the instruction permitted "any object" to fall within the definition of a "firearm," the instruction was too broad.

 Although we find that the instruction was erroneous, we hold that under the facts of this case such error was harmless. The crux of the harmless error analysis is whether the defendant received a fair trial on the merits and substantial justice has been achieved. When an error at trial has affected the verdict, the defendant has been deprived of a fair trial on the merits and substantial justice has not been achieved.

In Virginia, non-constitutional error is harmless "[w]hen it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, . . . a criminal conviction must be reversed unless "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can

conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

*Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (citations omitted).

 It is evident that whether an error at trial has affected the verdict in a particular case necessarily depends on the circumstances of that case. *Id.* at 1009, 407 S.E.2d at 913. "Each case must, therefore, be analyzed individually to determine if an error has affected the verdict." *Id.* "[H]armless error analysis is appropriate in the context of improper jury instructions." *Kil v. Commonwealth*, 12 Va. App. 802, 812, 407 S.E.2d 674, 679-80 (1991). Based upon our examination of the record and evidence presented in this case, we are satisfied that the language in the jury instruction, although too broad, did not affect the verdict or otherwise deprive Timmons of a fair trial on the merits.

There is no dispute that the "object" Timmons was charged with possessing was a .32 caliber semi-automatic pistol. In the context of this case, the jury was not concerned with "any object" but, rather, this particular .32 caliber pistol. Thus, although the broad language in the instruction included "any object," the evidence showed that the pistol in this case was, in fact, a weapon, and not simply an unidentified object. Because there was no dispute that the weapon was a .32 caliber semi-automatic pistol, the objectionable language in the instruction did not affect any issue that was in dispute and, therefore, did not affect the verdict. *See Hooker v. Commonwealth*, 14 Va. App. 454, 457, 418 S.E.2d 343, 345 (1992) ("[e]rroneously admitted evidence may be harmless when it tends to prove an undisputed fact that is also proven by other independently derived evidence").

 Moreover, pursuant to our holding in *Rogers v. Commonwealth*, 14 Va. App. 774, 418 S.E.2d 727 (1992), a weapon is not excluded from the operation of the statute simply because it is missing a part at the time it is seized. In *Rogers*, we had occasion to consider whether a weapon, which had no firing pin when discovered and, thus, "could not be fired as found," was nonetheless a "sawed-off shotgun" as that term is defined in the "Sawed-Off" Shotgun Act (Code §§ 18.2-299 to 18.2-307). The appellant in *Rogers* asserted that his conviction for possession of a sawed-off shotgun should be reversed because the absence of a firing pin made the weapon inoperable. In holding that "the absence of a firing pin in such a weapon does not exempt it from prohibition under the Act," we recognized that the weapon would

have become completely operable "after a moment's delay to insert a firing pin." *Id.* at 778, 418 S.E.2d at 729. We stated that holding otherwise " 'would permit criminals to carry [weapons] in the first stage of disassembly, ready to be reassembled on a moment's notice.' Alternatively, a criminal carrying [such a weapon] would be allowed to rendezvous with a confederate carrying the firing pin, thereby avoiding the application of the Act." *Id.* at 777, 418 S.E.2d at 729.

We find the reasoning in *Rogers* persuasive. A clip, like a firing pin, can be inserted "on a moment's notice" so as to make the weapon operable. To hold that a weapon merely missing a clip falls outside the scope of the statute would be tantamount to holding that criminals may carry weapons while possessing controlled substances, so long as the weapon is missing one part that could be quickly inserted "on a moment's notice." As in *Rogers*, we believe that this would produce a result unintended by the legislature.[3] Therefore, Timmons' contention that a weapon must be operable when discovered in order to fall within the purview of Code § 18.2-308.4 is without merit.

Therefore, we conclude that the error in instructing the jury that a "firearm" is "any object" that has the appearance of the capability of firing a projectile, even if it lacks that capability, was harmless. Accordingly, Timmons' conviction for possession of a firearm while in possession of cocaine is affirmed.

*Affirmed.*

Barrow, J., and Benton, J., concurred.

---

[3] Timmons overlooks the purpose of Code § 18.2-308.4, which is to deter the possession of firearms while being in the possession of drugs. Firearms, like sawed-off shotguns, present "substantial dangers that can arise through fear, intimidation, and potentially violent reactions to the display of an apparently lethal weapon, even one held for legitimate defensive purposes." *Rogers*, 14 Va. App. at 777, 418 S.E.2d at 729. These dangers, which are unrelated to the dangers of actually firing the weapon, are of significant concern when firearms are involved in drug transactions.