Present:  All the Justices

ERIC WAYNE ARMSTRONG
                                        OPINION BY
v.  Record No. 011948      JUSTICE LAWRENCE L. KOONTZ, JR.
                                      April 19, 2002
COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we consider whether the Court of Appeals of

Virginia correctly determined that in a prosecution for

violation of Code § 18.2-308.2, which provides that it is

unlawful for a person previously convicted of a felony "to

knowingly and intentionally possess . . . any firearm," the

Commonwealth is not required to prove as an element of the

offense that the object possessed by the defendant was an

"operable" firearm.

                            BACKGROUND

     Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

the prevailing party in the trial, granting to it all reasonable

inferences fairly deducible therefrom.  Dowden v. Commonwealth,

260 Va. 459, 461, 536 S.E.2d 437, 438 (2000).

     On February 12, 1998, the Sheriff of Highland County,

assisted by several other law enforcement officers, executed a

search warrant at the home of Eric Wayne Armstrong.  Following

the seizure of suspected illegal drugs and drug paraphernalia,

Armstrong was placed under arrest. During the search, the Sheriff and several of the other officers each observed a semi-automatic .22 caliber rifle inside a gun cabinet. The rifle was not examined in any detail at that time because the gun cabinet was locked and Armstrong did not have the key to it.

Armstrong, who had a prior felony conviction, was later charged with being a felon in possession of a firearm in violation of Code § 18.2-308.2. At a subsequent preliminary hearing, Armstrong's counsel delivered the rifle to the Sheriff. However, the Sheriff did not cause the rifle to be inspected or test-fired while it was in his possession.

At trial, the rifle was introduced into evidence. Melvin Eugene Armstrong, Armstrong's cousin, testified that the rifle belonged to him, but that he had unintentionally left the rifle at Armstrong's home during a prior hunting season. He testified that he had purchased the rifle in October 1997 and produced a receipt with a serial number matching the serial number on the rifle. He further testified that the rifle "wouldn't fire . . . . You could pull the trigger but the gun won't go off . . . . [T]he firing pin ain't hitting the casing so I assume it's got something to do with the spring in there or the firing pin one." He stated that while he was hunting "it just stopped shooting."

Armstrong did not dispute his prior felony conviction or his possession of the rifle.  Rather, his defense was based solely on his assertion that the rifle was not a "firearm" within the meaning of Code § 18.2-308.2 because it was inoperable.  The trial court rejected Armstrong's assertion and found him guilty of a violation of this statute.  The trial court sentenced Armstrong to two years' imprisonment, suspending all but seven months of that sentence.[1]

Armstrong noted an appeal to the Court of Appeals, asserting that the trial court had erred in finding that possession of an inoperable firearm constituted a violation of Code § 18.2-308.2.  In an unpublished opinion, a panel of the Court of Appeals, with one judge dissenting, affirmed Armstrong's conviction.  Armstrong v. Commonwealth, No. 1388-9-3 (November 21, 2000) (hereinafter Armstrong I).  Quoting Williams v. Commonwealth, 33 Va. App. 796, 807, 537 S.E.2d 21, 26 (2000), decided the same day as Armstrong I, the panel majority held that Code § 18.2-308.2 " 'prohibits felons from possessing actual firearms that are presently operable or that can readily or easily be made operable or capable of being fired with

---

[1] Armstrong was also convicted of misdemeanor possession of marijuana and received a fine of $150 for that offense.  Due to an apparent clerical error, the sentencing order imposes this fine in addition to the prison time for the firearm offense and fails to impose a sentence for the marijuana charge.

minimal effort and expertise.' " Armstrong I, slip op. at 3 (emphasis added). Relying on this latter requirement of proof, the panel majority held that "while currently inoperable, the only defect in [Armstrong's rifle] was that the 'firing pin' would not hit the 'casing,' a condition that 'could be readily or easily restored to [one] of operability.' " Id. at 4. The dissenting judge, while concurring that the issue was controlled by Williams, was of opinion that the Commonwealth's evidence had failed to show that the rifle could be made operable "'on a moment's notice.' " Id. at 6 (Frank, J., dissenting) (quoting Timmons v. Commonwealth, 15 Va. App. 196, 200-01, 421 S.E.2d 894, 897 (1992)).

Armstrong filed a petition for rehearing en banc, which was granted. Following argument before the full Court of Appeals, a majority, with one judge dissenting, affirmed Armstrong's conviction. Armstrong v. Commonwealth, 36 Va. App. 312, 549 S.E.2d 641 (2001) (en banc) (hereinafter Armstrong II).

The en banc majority, however, rejected the view adopted by the majority in the panel decision and reached its decision on grounds not asserted by either Armstrong or the Commonwealth in the appeal. Rather, the majority opined that the prior panels in both Williams and Gregory v. Commonwealth, 28 Va. App. 393, 504 S.E.2d 886 (1998), a decision relied upon by the panel in Williams, had misconstrued the holding of Jones v. Commonwealth,

4

16 Va. App. 354, 429 S.E.2d 615, aff'd on reh'g en banc, 17 Va. App. 233, 436 S.E.2d 192 (1993), a case which had previously construed the term "firearm" as used in Code § 18.2-308.2. Gregory affirmed the conviction of a felon in possession of an unloaded rifle; Williams reversed the conviction of a felon in possession of an inoperable, rusty pistol.

The majority began its analysis by noting that Code § 18.2-308.2 does not define the term "firearm" and that in Jones the Court had applied a "traditional" definition of firearm in concluding that this statute did not prohibit the possession of a BB handgun.[2] The majority then opined that in Gregory the Court had "diverted from the holding in Jones" by requiring the Commonwealth, pursuant to this statute, to prove that the weapon is designed or intended to expel projectiles by the discharge or explosion of gunpowder and that it is capable of doing so. Continuing, the majority noted that the Court in Williams had "reiterated" these elements of proof by requiring the Commonwealth to prove that the accused possessed an object manufactured for the purpose of expelling a projectile by an

---

[2] The traditional definition of firearm applied by the Court in Jones was any weapon from which a shot is discharged by gunpowder. 16 Va. App. at 356, 429 S.E.2d at 616 (citing Webster's Third International Dictionary 854 (1981)). The Court in Jones concluded that a BB handgun propels a projectile by pneumatic pressure rather than by gunpowder.

5

explosion and that the object is presently operational or can readily or easily be made operational or capable of being fired with minimal effort and expertise. Armstrong II, 36 Va. App. at 315-16, 549 S.E.2d at 643.

The majority reasoned that the "presently operational," or "ready capability," element of proof was contrary to the language of Code § 18.2-308.2 and had caused confusion. The majority further reasoned that the focus of the analysis in Jones had been on the distinction between those instances where a broad definition of the term is applied to statutes that criminalize the use of a firearm, see, e.g., Code § 18.2-53.1 (use of a firearm in the commission of a felony), and those in which the more narrow, traditional definition suffices to promote the purpose of a statute, such as Code § 18.2-308.2, that criminalizes the simple possession of a firearm. The majority noted that in the former instance, the purpose of the statute is to deter the perpetration of crimes that put the victim in fear of harm as the result of the perception that a firearm is being used, while the act of firearm possession involves no perception element by a victim. Armstrong II, 36 Va. App. at 317 and n.4, 549 S.E.2d at 643 and n.4.

The majority concluded that Code § 18.2-308.2 expressed a "legislative intent of keeping firearms out of the hands of convicted felons," id. at 318, 549 S.E.2d at 644, and, further,

6

that "[t]he General Assembly included no language in the statute to circumscribe the absolute prohibition of a convicted felon's possession of a firearm.  It matters not whether the gun's current condition is 'operable' or 'inoperable.'"  Id. at 320, 549 S.E.2d at 645.  "When enacting Code § 18.2-308.2, the General Assembly's intent was clear:  A felon cannot possess any firearm."  Id. at 321, 549 S.E.2d at 645.

Thus, the majority affirmed Armstrong's conviction, holding that "[i]n a prosecution under Code § 18.2-308.2, once the Commonwealth proves the accused is a convicted felon who possessed an object made to 'expel a projectile by the combustion of gunpowder or other explosive,' then it has proven all the necessary elements of the crime based on the plain language of the statute."  Id. at 320-21, 549 S.E.2d at 645.  In so holding, the majority, pursuant to Code § 17.1-402(D), stated that it was expressly overruling Gregory and Williams, and, to the extent that Jones could be read to establish a requirement of proof that the firearm was operable or could readily be made so, Jones also was overruled.  Id. at 321, 549 S.E.2d at 645-46.

The dissenting judge took the view that in Jones the Court had held that proof that the "device has the actual capacity to do harm because of its ability to expel a projectile by the power of an explosion" was an element of the Commonwealth's burden to establish that the defendant had possessed a "firearm"

7

in violation of Code § 18.2-308.2.  Id. at 322-23, 549 S.E.2d at 646 (Benton, J., dissenting) (quoting Jones, 16 Va. App. at 357, 429 S.E.2d at 617).  Noting that the General Assembly had revised Code § 18.2-308.2 subsequent to Jones "without any indication that it has disagreed with" this statement in Jones, Armstrong II, 36 Va. App. at 323, 549 S.E.2d at 646, the dissent opined that the majority's "only compelling feature is that it has garnered a sufficient number of votes to overrule our prior decisions."  Id. at 325, 549 S.E.2d at 648.  Accordingly, citing Bouie v. City of Columbia, 378 U.S. 347, 353 (1964), the dissent further opined that the majority had violated Armstrong's due process rights by "a radical lowering of the threshold for [obtaining a] conviction" under Code § 18.2-308.2. Armstrong II, 36 Va. App. at 325, 549 S.E.2d at 647.

By order dated November 14, 2001, we awarded Armstrong this appeal.

DISCUSSION

This Court has not previously construed the term "firearm" as used in Code § 18.2-308.2.[3]  As he did in the Court of

---

[3] Gregory, one of the cases overturned by the Court of Appeals in Armstrong II, was the subject of a petition for appeal in this Court that was refused in an unpublished order. See Gregory v. Commonwealth, Record No. 982169 (December 17, 1998).  As we have recently noted, while "the refusal of a petition for appeal is based upon the merits of the case . . . unless the grounds upon which the refusal is based is

8

Appeals, Armstrong concedes that the .22 caliber rifle found in his home was originally designed and manufactured to expel a bullet by the explosion of gunpowder and that the evidence was sufficient to prove that the rifle was in his possession at the time of his arrest.  Because the rifle was not presently operable, Armstrong urges this Court to hold that the Court of Appeals, in overturning the established precedent of Gregory and Williams, violated his due process right to be adequately informed of the nature of the offense with which he had been charged.  In the alternative, Armstrong further urges that we reverse the judgment of the Court of Appeals overruling Gregory and Williams, and, applying the rationale of those cases, that we adopt the view of the dissent in Armstrong I that the Commonwealth failed to carry its burden to produce sufficient evidence to show that the rifle in his possession was an operable firearm or could be readily and easily made so.

### Due Process Considerations

Armstrong relies on Bouie, the United States Supreme Court opinion cited by the dissent in Armstrong II, for the

---

discernable from the four corners of the Court's order, the denial carries no precedential value." Sheets v. Castle, 263 Va. 407, 412, 559 S.E.2d 616, 619 (2002).  Jones was decided adverse to the Commonwealth and predated the enactment of the statute permitting the Commonwealth to appeal adverse decisions of the Court of Appeals.  Williams, also decided adverse to the Commonwealth, was not appealed by the Commonwealth.

9

proposition that the Court of Appeals' rejection of Williams and Gregory was "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, [which] operates precisely like an ex post facto law" in violation of the defendant's due process rights. Bouie, 378 U.S. at 353. Thus, he contends that even if the Court of Appeals erred in those prior cases in requiring the Commonwealth to prove, under Code § 18.2-308.2, that the firearm was operable or could be readily made so, at the time of his trial that was nonetheless the state of the law which should be applied in his case.

Armstrong's reliance on Bouie is misplaced. Bouie applies to changes in the interpretation of a criminal statute that are "indefensible by reference to the law that had been expressed prior to the conduct in issue." Id. at 354 (emphasis added). As the majority in Armstrong II noted, and as the record clearly establishes, the conduct which resulted in Armstrong being charged with a violation of Code § 18.2-308.2 antedates the Court of Appeals' decisions in Gregory and Williams. See United States v. Lanier, 520 U.S. 259, 266 (1997); accord Rogers v. Tennessee, 532 U.S. 451, 457-62 (2001).

In addition, while published panel decisions of the Court of Appeals are precedent binding on other panels of that Court, the precedent remains subject to review by the Court of Appeals sitting en banc and by this Court on appeal. Commonwealth v.

10

Burns, 240 Va. 171, 173-74, 395 S.E.2d 456, 457 (1990).  By contrast, the concern expressed in Bouie related to "a State Supreme Court" using judicial construction to subvert due process, leaving the defendant with no avenue of redress from the state.  See Bouie, 378 U.S. at 353-54.  Such is not the case here.  Accordingly, there can be no implication that in overturning the panel decisions in Gregory and Williams, the en banc Court of Appeals violated Armstrong's due process rights.

## Meaning of "Firearm" in Code § 18.2-308.2

"[P]enal statutes must be 'strictly construed against the State' and  . . . 'cannot be extended by implication or construction, or be made to embrace cases which are not within their letter and spirit.' "  Commonwealth, Dep't of Motor Vehicles v. Athey, 261 Va. 385, 388, 542 S.E.2d 764, 766 (2001) (quoting Berry v. City of Chesapeake, 209 Va. 525, 526, 165 S.E.2d 291, 292 (1969)).  However, although we construe statutes strictly in criminal cases, we will not apply "an unreasonably restrictive interpretation of the statute" that would subvert the legislative intent expressed therein.  Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979).

Consistent with these principles, we have recognized that when the legislature seeks to punish the use of a firearm as a criminal act, the term "firearm" must not be unreasonably restricted by judicial construction such that the legislative

11

intent is thereby frustrated.  See, e.g., Holloman v.

Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980) (per

curiam) (holding that Code § 18.2-53.1, criminalizing use or

display of a firearm in the commission of a felony, included use

of "an instrument that gives the appearance" of being a

firearm).  Similarly, when the nature of some other criminal act

is defined by whether the defendant achieves his purpose through

the use of a firearm, a narrow construction of the term is not

warranted.  See, e.g., Johnson v. Commonwealth, 209 Va. 291,

296, 163 S.E.2d 570, 574 (1968) (charge that attempted robbery

involved " 'presenting of firearms or other violence' " did not

warrant jury instruction that the instrument displayed was an

operable firearm).  The rationale underlying this interpretation

of statutes prohibiting the use of a firearm in various contexts

is the same.  As we succinctly stated in Holloman with respect

to the construction of the term "firearm" in Code § 18.2-53.1:

> The purpose . . . is [not only] to deter violent
> criminal conduct . . . but also . . . to discourage
> criminal conduct that produces fear of physical harm.
> Such fear of harm results just as readily from
> employment of an instrument that gives the appearance
> of having a firing capability as from use of a weapon
> that actually has the capacity to shoot a projectile.
> The victim of a crime can be intimidated as much by a
> revolver that does not fire bullets as by one that
> does.

Holloman, 221 Va. at 198, 269 S.E.2d at 358; see also Kelsoe v.

Commonwealth, 226 Va. 197, 199, 308 S.E.2d 104, 104 (1983) (per

12

curiam) (gravamen of the offense of brandishing a firearm is the inducement of fear in another).

By contrast, the conduct proscribed by Code § 18.2-308.2, being a felon in possession of a firearm, focuses on the General Assembly's determination that certain individuals – felons – are unfit to possess firearms, even for lawful purposes.[4] Undoubtedly that determination is consistent with the view held by society in general. Thus, we are of opinion that the legislative intent underlying Code § 18.2-308.2 is not directed toward proscribing "criminal conduct that produces fear of physical harm" to an individual victim and, accordingly, the offense has no element of perception by a victim that would warrant applying the same broad construction to the term "firearm" in that statute as is applicable to the same term in Code § 18.2-53.1. Because the legislative intent of Code § 18.2-308.2 is to prohibit convicted felons from possessing "any firearm" (emphasis added), we must consider what meaning of the term "firearm" will give effect to that intent without

---

[4]Similarly, the General Assembly has determined that other persons are unfit to possess firearms and other dangerous weapons. Cf. Code §§ 18.2-308.1:1, 18.2-308.1:2, 18.2-308.1:3 (prohibiting possession of firearms by certain persons adjudicated as mentally ill or incompetent), 18.2-308.2:01 (prohibiting possession of certain firearms by illegal aliens), 18.2-308.4 (prohibiting possession of firearms by persons in possession of certain controlled substances).

13

improperly expanding or unreasonably restricting the meaning of the language used by the General Assembly.

As noted by the Court of Appeals, Code § 18.2-308.2 provides no express definition of the term "firearm." Similarly, other statutes within Title 18.2 use the term "firearm" without providing an express definition of that term. See, e.g., Code 18.2-308.5. However, other related statutes do provide definitions of that term. Accordingly, we may look to the related statutes, reading them in pari materia with the statute under consideration, in order to give consistent meaning to the language used by the General Assembly. Lucy v. County of Albemarle, 258 Va. 118, 129, 516 S.E.2d 480, 485 (1999).

Code §§ 18.2-308.2:2 and 18.2-308.2:3 define a firearm as "any handgun, shotgun, or rifle which expels a projectile by action of an explosion." Code § 18.2-308(M) defines a "handgun" as an instrument "originally designed, made and intended to fire a projectile by means of an explosion of a combustible material from one or more barrels." Code § 18.2-433.1 defines a "*Firearm*" as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon." Similar definitions of a firearm or a specific type of firearm may be found, for example, in Code §§ 18.2-287.4, 18.2-308.2:01, 18.2-308.7, and 22.1-277.01(D).

14

None of these statutory definitions reflect a legislative intent in a statute that prohibits the possession of a firearm to limit the term "firearm" to one that is presently operable. We are of opinion that the General Assembly intended to include any instrument designed, made, and intended to fire or expel a projectile by means of an explosion within the definition of a firearm, absent express language to the contrary. And we are further of opinion that to read into Code § 18.2-308.2 by implication a requirement that the meaning of the term "firearm" includes an element of present capacity or operability would amount to an unreasonably restrictive interpretation of that term and subvert the intent of the General Assembly.

We hold that in order to sustain a conviction for possessing a firearm in violation of Code § 18.2-308.2, the evidence need show only that a person subject to the provisions of that statute possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion.[5] It is not necessary that the Commonwealth prove the

---

[5] We observe that our holding today is consistent with the decisions of other jurisdictions that have considered this or a similar issue. See, e.g., United States v. Adams, 137 F.3d 1298, 1300 (11th Cir. 1998) (reaching same conclusion with respect to federal felon in possession of a firearm statute and noting that all other federal circuits addressing the issue were in agreement); People v. Brown, ___ N.W.2d ___, ___ (Mich. Ct. App. 2002)("a handgun need not be currently operable in order to qualify as a 'firearm' " under felon in possession statute);

instrument was "operable," "capable" of being fired, or had the "actual capacity to do serious harm." Accordingly, we affirm the judgment of the Court of Appeals in Armstrong II to overrule Gregory and Williams, and in limiting the reading of Jones to any extent that it could be read as being inconsistent with the opinion expressed in Armstrong II.

### Sufficiency of the Evidence

During the oral argument of this appeal, the Commonwealth conceded that an instrument originally designed, made, and intended to expel a projectile by force of an explosion could fall into a state of such significant disrepair or be altered in such a way that it would cease to be a "firearm" for purposes of applying Code § 18.2-308.2.[6] Such a case, however, is not presented by this appeal. The evidence that Armstrong's rifle was inoperable indicates that it could have been repaired by the

---

Thomas v. State, 36 S.W.3d 709, 711 (Tex. Ct. App. 2001) (felon in possession statute requires only proof of a device designed, made, or adapted to perform as a firearm, and not that it is presently capable of firing); State v. Rogers, 494 So.2d 1251, 1254 (La. Ct. App. 1986) (firearm need not be operable at the time felon possessed it); State v. Baldwin, 237 S.E.2d 881, 882 (N.C. Ct. App. 1977) (state need not show weapon was operable).

[6] Common sense and experience leave no room for doubt that an instrument originally designed, made, and intended to expel a projectile by force of an explosion can lose this characteristic in many ways such that it would no longer be fairly considered a firearm. However, we express no opinion here on the degree of disrepair or alteration that would cause an instrument to no longer qualify as a firearm under Code § 18.2-308.2.

16

adjustment of the spring between the trigger and the hammer or by adjustment of the firing pin.  As such, the rifle was clearly not in so serious a state of disrepair that it had lost its characteristic as an instrument designed, made, and intended to expel a projectile by means of an explosion.  It is irrelevant that Armstrong may have lacked the requisite skill to effect the needed repair or that he might not have been able to render the rifle immediately operable.[7]  The evidence was clearly sufficient to establish that the rifle was designed, made, and intended to expel a projectile by means of an explosion, and that is all the Commonwealth need prove to establish that it was a firearm within the meaning of the statute.  Accordingly, we hold that the Court of Appeals did not err in affirming Armstrong's conviction for having possessed a firearm in violation of Code § 18.2-308.2.

---

[7] We recognize that in Rogers v. Commonwealth, 14 Va. App. 774, 777-78, 418 S.E.2d 727, 729 (1992), the Court of Appeals held that a weapon missing a firing pin was a firearm under Code § 18.2-308.2, since it could be made "completely operable . . . after a moment's delay."  Similarly, in Timmons, 15 Va. App. at 200-01, 421 S.E.2d at 897, the Court of Appeals stated that an unloaded weapon can be made ready to function "on a moment's notice" and, thus, was a firearm within the meaning of Code § 18.2-308.4.  In neither instance, however, was there any doubt that the instrument in question was not one designed, made, and intended to expel a projectile by means of an explosion and, thus, the references to "a moment's notice" and "a moment's delay" may be considered dicta.

CONCLUSION

For these reasons, the judgment of the Court of Appeals will be affirmed.  However, we will remand the case to the Court of Appeals with instructions to remand the case to the trial court for the sole purpose of correcting, nunc pro tunc, the clerical error in the trial court's sentencing order.  See note 1, supra.

Affirmed and remanded.