COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, O'Brien and Athey
Argued at Norfolk, Virginia


PETER W. BABAR

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0580-23-1                      JUDGE GLEN A. HUFF
                                                    JULY 2, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John R. Doyle, III, Judge

(Cole M. Roberts; Law Office of Eric Korslund, P.L.L.C., on brief),
for appellant.  Appellant submitting on brief.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


        The Circuit Court of the City of Norfolk (the "trial court") convicted Peter W. Babar

("appellant") of possessing a firearm as a violent felon, in violation of Code § 18.2-308.2.  On

appeal, he contends the evidence was insufficient to prove he possessed a "firearm" rather than

some other object that merely resembled a firearm.  For the following reasons, this Court affirms the

trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

On August 18, 2020, Abriel Epps drove her brother-in-law, Charles Sparks, to a house in Norfolk, Virginia, and parked outside. Epps thought they were there to buy marijuana from Donell Small, Jr., who lived nearby. When they arrived, Small was standing with some men in front of his SUV parked directly across the street. Small's girlfriend, Krystal Bowers, was sitting in the driver's seat of his SUV. Sparks exited his car and spoke to Small while standing in the street between the two vehicles. While Epps waited in Sparks's car, she noticed a firearm lying on the passenger-side floorboard.

While Sparks and Small were speaking to each other, Small's mother, Delphine Simmons, arrived in a black Mercedes with her husband, appellant, and parked behind Small's SUV. Epps watched appellant exit the Mercedes and run toward Sparks while brandishing a gun. Sparks fled to the passenger side of his car and tried to get in but appellant grabbed him and "point[e]d [the] gun" at him. Sparks, apparently unarmed, raised his hands in surrender and declared, "I don't want no problem."

Meanwhile, Small retrieved a firearm from his SUV and walked over to Sparks's car with his mother. When Epps exited the car and spoke to them, appellant—who was attacking Sparks on the opposite side of the car—"pointed [his] gun" at Epps and called her a "bitch." Epps asked Small to allow her and Sparks to leave, but Small replied, "I can't. [Sparks] threatened me." While still facing Small, Epps heard a gunshot behind her from the area where Sparks and appellant had been fighting. Epps immediately turned around and saw Sparks "hunched over"

---

[1] "In accordance with familiar principles of appellate review," this Court recites the facts "in the light most favorable to the Commonwealth, the prevailing party" in the trial court. *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

near the trunk of his car while appellant started fleeing from the scene. Epps then heard "six or seven" additional gunshots and saw Sparks collapsed in the street. She helped Sparks into his car and drove him to a hospital where he ultimately died from gunshot wounds.

While at the hospital, Epps told investigators about the firearm she saw on the floorboard of Sparks's car before the shooting, although she later acknowledged that there might have been two firearms. Police searched Sparks's car and found an "inoperable" firearm. They also collected several spent cartridge casings found at the crime scene.[2]

During his investigation, Norfolk Police Detective Kyle Austin learned that a surveillance camera on a property near the crime scene had recorded the shooting.[3] Although imperfect, the video from the camera showed the series of events leading up to and including the shooting, which largely corroborated Epps's account. First, about ten minutes before the shooting, Small's SUV arrived and parked in front of a residence. Small then exited the SUV and met three unidentified individuals who arrived on foot. A few minutes later, Sparks's car arrived and parked across the street from Small's SUV. Sparks exited the passenger side of his car and confronted Small in the street between the two vehicles.

A few seconds later, Small's mother and appellant arrived in a black Mercedes, parked behind Small's SUV, and exited the vehicle. Appellant walked rapidly toward Sparks, who turned and fled toward the passenger side of his car. Appellant ran after Sparks, extending his hands towards Sparks while holding them together as if holding an object. During this pursuit, appellant and Sparks disappeared from view behind a tree that partially obstructed the camera's view of the passenger side of Sparks's car.

---

[2] The record does not disclose the exact location, number, caliber, or make of the cartridge casings that were found.

[3] Unfortunately, the camera did not record sound, the quality of the video was poor, and the camera's view was partially obstructed by a tree in front of a residence.

Meanwhile, Small retrieved an object from his SUV and walked to Sparks's car with his mother, Simmons, where Epps was still sitting in the driver's seat. Epps then exited Sparks's car and confronted Simmons and Small in the street between their vehicles. During that confrontation, Small walked around to the passenger side of Sparks's car and then returned to the driver's side a few seconds later. Appellant then also briefly moved to the driver's side of Sparks's car before returning to the passenger side, where Sparks remained standing. As he did so, one of the three unidentified individuals still present at the scene stood in front of Sparks's car while the other two walked around to the passenger side.

Seconds later, the camera showed some movement between Sparks and appellant, which was partially obscured by the tree in front of the camera. Appellant and the three unidentified men then fled from the area in different directions. Moments later, Sparks emerged from behind the tree, crouching near the trunk of his car. Small, still standing in the middle of the street, raised his left arm as if holding an object and pointed it at Sparks, who then collapsed. Small fled the scene on foot while Simmons and Bowers drove away in their vehicles. Epps and Sparks returned to his car and drove away together. Several minutes after the shooting, but before police arrived, an unidentified individual walked into the area where Sparks's car had been parked, picked something up from the ground, and ran away.

At trial, the Commonwealth introduced a copy of the surveillance video depicting the shooting and a transcript of Epps's testimony from a prior trial, during which she described the shooting and commented on portions of the surveillance video.[4] Epps confirmed that although she did not see appellant shoot Sparks, she had seen appellant "chase[] [Sparks] with a gun towards the passenger side of [Sparks's] car" and she heard the first gunshot come from their

_____

[4] Epps testified at appellant's earlier trial for use of a firearm in the commission of a felony arising from the same incident. The parties stipulated to the admissibility of the transcript of her testimony.

- 4 -

direction. She also confirmed that Small, Bowers, and Simmons were in front of her and were not shooting when she heard the first gunshot. And despite acknowledging that she found at least one firearm in Sparks's car before the shooting, Epps maintained that she did not see Sparks holding a weapon at any point during the incident.

Detective Austin also reviewed the surveillance video during trial and admitted that he could not discern whether Sparks was holding a firearm. Austin opined, however, that as appellant exited his vehicle and ran toward Sparks, appellant "hunche[d] his shoulders," lowered his head, and held his arms outstretched in a manner consistent with a firearm "presentation stance." Austin further stated that the video depicted appellant on the passenger side of Sparks's car "striking somebody or using some sort of violent action" just before everyone "scattered."

After the Commonwealth's case-in-chief, appellant moved to strike the evidence, arguing that it failed to prove he possessed an "actual firearm." The trial court found that the video of the shooting depicted appellant exit his vehicle and run "directly" toward Sparks "in a posture that's unique to someone . . . brandishing a firearm." In addition, the court credited Epps's testimony that appellant "threaten[ed]" her and Sparks with the object he was brandishing, which suggested that the object was "an actual firearm." And although the surveillance camera was incapable of recording sound, the trial court observed that appellant ran away after Epps heard the first gunshot, "which was consistent with a shot being fired," and then Small "react[ed] by opening fire" on Sparks. Accordingly, the trial court denied the motion to strike.

Appellant then called Small, Bowers, and Anthony McDowell—a neighbor who lived on the street where the shooting occurred—to provide their accounts of the shooting. Small and McDowell claimed that appellant was unarmed and merely "talking with his hands" when he exited his vehicle and confronted Sparks. During an ensuing argument, Sparks ran away from appellant and retrieved a firearm from his car. When appellant tried to prevent Sparks from

using the firearm, McDowell saw Sparks point the firearm but "it didn't go off." Then "everyone took off running," and Sparks tried to retrieve another firearm from his vehicle. Small saw Sparks "come up with a gun," so he pointed his firearm at Sparks and repeatedly shot him before fleeing the scene. Small acknowledged that he had been convicted in an earlier trial of voluntary manslaughter arising from the shooting and claimed that he was the only person who shot Sparks. Bowers also claimed that Sparks pointed a firearm at her during the fray.

In considering all the evidence presented and argument by counsel, the trial court found that Epps's account was credible because it was corroborated by the shooting video "in every respect." Additionally, the court found that the video "clear[ly]" depicted appellant "rushing at Sparks" in a manner consistent with someone "brandishing a firearm at a target." After rejecting as unreasonable appellant's proffered hypothesis of innocence that he might have armed himself with a fake or inoperable firearm, the trial court found the evidence sufficient to prove that appellant possessed an actual firearm in violation of Code § 18.2-308.2. Based on appellant's status as a prior violent felon, the trial court sentenced appellant to a mandatory period of five years' incarceration.[5] *See* Code § 18.2-308.2(A). This appeal followed.

## STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204,

---

[5] The record reflects that appellant was previously convicted of multiple counts of robbery, use of a firearm in the commission of a felony, abduction, and grand larceny.

228 (2018)).  "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## ANALYSIS

Appellant asserts that the evidence was insufficient to support his conviction because it proved only that he possessed an object that resembled a firearm, which alone is insufficient to prove that the object was, in fact, an actual firearm as required by Code § 18.2-308.2.  Although Epps testified that she saw appellant brandish a "gun" at Sparks and later heard a gunshot come from their direction, appellant emphasizes that Epps did not see appellant shoot Sparks.  He also asserts that the video evidence did not corroborate Epps's account because it "did not have a sound of gunshots," "show a muzzle flash coming from a firearm," or "show a gun in [his] hands."  Appellant then emphasizes that Small and McDowell both testified that he was unarmed, and Small even claimed to be the only person who shot Sparks.  According to appellant, even when considered along with an implied assertion that the gun was a functioning firearm, the bare testimony that he brandished a "gun" is insufficient to prove that the object was an actual firearm.  This Court finds no merit in appellant's assessment of either the evidence or his interpretation of Code § 18.2-308.2.

To sustain a conviction for firearm possession under Code § 18.2-308.2, "[i]t is not necessary that the Commonwealth prove the instrument was operable, capable of being fired, or had the actual capacity to do serious harm."  *Armstrong v. Commonwealth*, 263 Va. 573, 584

- 7 -

(2002). Instead, "the evidence need show only that a person subject to the provisions of that statute possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion." *Id.* "Whether the object is a firearm that was designed, made, and intended to fire or expel a projectile by means of an explosion is a question of fact that may be proven by [both direct and] circumstantial evidence." *Speller v. Commonwealth*, 69 Va. App. 378, 395 (2018).

Circumstantial evidence is not "viewed in isolation" because the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]" to conclude beyond a reasonable doubt that a defendant is guilty. *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Such evidence may include a lay witness's identification of an object as a firearm, since "firearms are generally not so exotic that it requires extensive or specialized expertise for a great many lay persons with familiarity with them to correctly identify a firearm as such." *Murray v. Commonwealth*, 71 Va. App. 449, 458 (2020). Moreover, the manner in which a defendant uses an object may constitute an "implied assertion" that the object is an actual firearm. *Jordan v. Commonwealth*, 286 Va. 153, 158 (2013).

In *Redd v. Commonwealth*, 29 Va. App. 256, 258 (1999), this Court found the evidence sufficient to prove the defendant possessed an actual firearm under Code § 18.2-308.2 where she brandished a "long, black gun" at a store clerk and threatened to kill the clerk if she triggered an alarm. Because the clerk was "not familiar with guns," her testimony that the defendant held a "gun" was insufficient by itself to prove that the object the defendant held was designed "to expel a projectile by the power of explosion." *Id.* at 259. Nevertheless, the defendant's threat to kill the clerk was an "implied assertion" that the object she held was a functioning firearm. *Id.*

That implied assertion—combined with the clerk's description of the object—sufficed to prove that the object was designed "to expel a projectile by the power of explosion." *Id.* This Court emphasized that "[t]his implied assertion . . . was corroborated by the appearance of the object and . . . uncontradicted by any other evidence. *Id.* The Supreme Court has similarly held that the manner in which the defendant pointed an object at the victim's head during a carjacking, combined with the victim's identification of the object as a specific type of firearm, was sufficient to prove that the object was "designed, made, and intended to fire or expel a projectile by means of an explosion." *Jordan*, 286 Va. at 158 (citing *Armstrong*, 263 Va. at 584).

The record here supports the trial court's finding that the object appellant brandished at Sparks was a "firearm" under Code § 18.2-308.2. To begin, Epps testified unequivocally that appellant exited his vehicle and brandished a "gun" at her and Sparks. Although the record does not disclose Epps's familiarity with firearms, her identification of the object appellant brandished as a "gun" is probative of whether the object was, in fact, an actual firearm. *Redd*, 29 Va. App. at 258. So too is her testimony that she heard a "gunshot" and saw a different firearm on the front passenger floorboard of Sparks's car.

Additionally, appellant's conduct during the shooting permitted the trial court to infer that the object he brandished was an actual firearm. The video evidence demonstrated that when appellant ran toward Sparks, he "hunche[d] his shoulders," lowered his head, and extended both arms as though holding an object, which Detective Austin opined was consistent with a firearm "presentation stance." The trial court thus concluded that the video "clear[ly]" depicted appellant "rushing at Sparks" in a manner consistent with someone "brandishing a firearm at a

target."[6]  That finding was not plainly wrong.  Moreover, the consistency of Epps's account with the video footage supported the inference that appellant impliedly asserted the object he brandished at Sparks and Epps was a real firearm.  *Redd*, 29 Va. App. at 258; *Jordan*, 286 Va. at 158.

The record further supports the conclusion that appellant shot Sparks with a real firearm. Although Epps did not see appellant shoot Sparks, she heard the first gunshot originate from the area where appellant and Sparks were quarreling behind Sparks's car.  And when she turned to face them, she saw appellant fleeing the scene and Sparks "hunched over" near the trunk of his car. *See Aley v. Commonwealth*, 75 Va. App. 54, 68 (2022) (holding that a fact finder may infer a defendant's "'consciousness of guilt' from his efforts to avoid detection").  Relying heavily on Small's admission that he was the only one who shot Sparks, appellant opposes the inference that the first gunshot Epps heard came from his "gun."  Epps, however, was facing Small when she heard the first gunshot, and she testified that he was not shooting at that point.  Those circumstances, coupled with the absence of evidence suggesting that anyone other than Small, appellant, or Sparks possessed a firearm, permitted the trial court to infer that appellant had indeed fired the first bullet that injured Sparks, after which appellant fled the scene to avoid arrest.[7]

---

[6] This Court's deference to the trial court's factual findings "is not limited solely to matters of witness credibility.  We owe deference to the trial court's interpretation of all of the evidence, including video evidence . . . ." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022).

[7] The weight of this inference remains the same regardless of whether the bullet shot from appellant's gun actually struck Sparks or instead missed its target.

Lastly, appellant's reliance on *Street v. Commonwealth*, No. 1537-10-2 (Va. Ct. App. Dec. 6, 2011), is misplaced.[8] In *Street*, this Court held that the evidence was insufficient to prove the defendant possessed an actual firearm under Code § 18.2-308.2 even though a store clerk testified that Street brandished a "gun" and surveillance video corroborated her account. *Id.*, slip op. at 4. There, this Court emphasized that a detective "was unable to determine [from the video] whether the object was a real gun," and "*no . . . other evidence*" demonstrated "that the object used by Street was anything more than an instrument that looked like a gun." *Id.* at 5 (emphasis added). Appellant contends that the evidence here likewise failed to prove that he possessed an actual firearm because Epps's testimony was not corroborated by other uncontradicted evidence. This Court disagrees.

Although Small, Bowers, and McDowell each testified that Sparks brandished a firearm just before the shooting, and Small even claimed that he was the only person who shot Sparks, the trial court was not required to accept their accounts. Indeed, it is well-established that "[t]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). By convicting appellant, the trial court inherently "found by a process of elimination that the evidence does not contain a reasonable theory of innocence." *Rams*, 70 Va. App. at 28 (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)).

"Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). As already

---

[8] Citation of an unpublished opinion is "permitted as informative, but will not be received as binding authority." Rule 5A:1(f).

noted, Epps testified unequivocally that she saw appellant brandish a gun at Sparks and point the same weapon at her when he called her a "bitch." She also explained that Sparks was unarmed and Small was not shooting his gun when she heard the first gunshot come from the area where appellant was attacking Sparks. After reviewing video of the shooting, the trial court concluded that the footage corroborated Epps's account "in every respect." The trial court thus credited Epps's testimony and implicitly discounted that of Small, Bowers, and McDowell.

Based on the deferential standard of appellate review applicable here, and being unable to say that the trial court was plainly wrong, this Court accepts as binding the trial court's reasonable interpretation of the video evidence and determinations of witness credibility. *See Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) ("As factfinder, a trial court views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did."). In contrast to *Street*, the totality of the evidence presented allowed the trial court to conclude that appellant used the object he brandished to shoot at Sparks, thus proving that the object was "designed, made, and intended to fire or expel a projectile by means of an explosion." *Armstrong*, 263 Va. at 584.

## CONCLUSION

The trial court did not err in finding the evidence sufficient to convict appellant of possessing a firearm under Code § 18.2-308.2. When taken together, Epps's testimony identifying the object appellant brandished as a "gun," appellant's conduct during the shooting as corroborated by video footage, and the circumstantial evidence eliminating the likelihood that anyone other than appellant fired the first gunshot at Sparks, permitted the trial court to find that

appellant possessed an actual "firearm" as opposed to some other object that merely happened to look like a gun.  Accordingly, this Court affirms the trial court's judgment of appellant's guilt.

*Affirmed.*