COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Athey and White


DAVID LEE O'QUINN

                                          MEMORANDUM OPINION[*]

v.      Record No. 0286-24-3                        PER CURIAM
                                                     APRIL 8, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge[1]

(William C. Meyer, II, on brief), for appellant. Appellant
submitting on brief.

(Jason S. Miyares, Attorney General; Rachel A. Glines, Assistant
Attorney General, on brief), for appellee.


On January 19, 2024, a jury empaneled in the Circuit Court of Pittsylvania County ("trial court") convicted David Lee O'Quinn ("O'Quinn") of possessing a firearm after having been previously convicted of a violent felony, pursuant to Code § 18.2-308.2(A). On appeal, O'Quinn contends that the trial court abused its discretion by excluding evidence concerning whether the firearm was operable. Since the exclusion of the evidence by the trial court would be no more than harmless error, we affirm.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge James J. Reynolds entered an October 19, 2023 arraignment order where O'Quinn entered a plea of not guilty.

[2] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit," Code § 17.1-403(ii)(a); Rule 5A:27(a), and "the dispositive issue or issues have been authoritatively decided, and the appellant failed to argue that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

## I. BACKGROUND[3]

In March of 2022, Pittsylvania County Sheriff's Office Corporal Adam Reynolds ("Corporal Reynolds") was on patrol when he spotted a truck parked in a field near an intersection. Corporal Reynolds had been "on the lookout" for this truck for most of the day because the truck had been identified as belonging to a person who had been reported for suspected larceny. Upon closer inspection, Corporal Reynolds found that the truck had been abandoned. Corporal Reynolds parked his police cruiser next to the truck to await the return of its owner. Sheriff's Investigators Nick Samuels ("Investigator Samuels") and Janet Sargent ("Investigator Sargent") subsequently arrived on the scene as well.

While Corporal Reynolds briefly left the scene to respond to another call, Investigator Samuels and Investigator Sargent continued to wait at a nearby intersection for the vehicle's owner to return. As they surveilled the scene, O'Quinn approached the driver's side door of the truck from a nearby wooded area. The investigators then "pull[ed] up" to the vehicle and detained O'Quinn. O'Quinn gave his consent for the investigators to search a bag located in the truck. O'Quinn admitted that he had been driving the truck but had pulled over when the truck started overheating before urinating on the side of the road. He also advised the investigators that his wife's black backpack was inside the truck. The police subsequently found the black backpack, which contained jewelry in the front passenger seat. The investigators then arrested O'Quinn on outstanding warrants and arranged to have the truck towed. The investigators later

---

[3] "On appeal, we recite the facts 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Konadu v. Commonwealth*, 79 Va. App. 606, 610 n.1 (2024) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). "Doing so requires that we 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

discovered that O'Quinn had been previously convicted of felony breaking and entering, among other offenses.[4]

Prior to the vehicle being towed, the investigators obtained a search warrant and proceeded to conduct a preliminary search of the vehicle. Investigator Sargent described the truck's interior as "a hoarder type situation," and photographs entered in evidence corroborated her description. Investigator Sargent further noted that there were many items piled in the driver's seat that needed to be moved so that the tow truck driver could maneuver the steering wheel. While moving some of those items, the investigator found a small caliber, semiautomatic pistol on the driver seat. The pistol was not loaded, and no magazine containing ammunition was found. As a result, on March 11, 2022, O'Quinn was indicted for possessing a firearm after having been convicted of a violent felony.

At trial, Corporal Reynolds, Investigator Samuels, and Investigator Sargent testified with respect to the aforementioned events. During the cross-examination of Investigator Sargent, she was asked if the pistol was operable, to which she responded, "I cannot testify to that. No, sir, I've not fired it." Following her answer, the Commonwealth objected as to the relevancy of testimony elicited to establish whether the firearm was operable or not. Counsel for O'Quinn responded to the relevancy objection by asserting that the firearm's operability was relevant as to whether O'Quinn was aware of the presence of the firearm on the front seat of the truck. The trial court sustained the Commonwealth's objection as to relevancy on the ground that the operability of the firearm is not an element of the alleged offense.

The Commonwealth also introduced into evidence a recorded interview with O'Quinn. During this interview, O'Quinn told the police that the firearm was an antique that his wife Lisa

---

[4] Felony breaking and entering is prosecuted under Code § 18.2-91 and is defined as a "violent felony offense." Code § 17.1-805(C).

had purchased in 2010 and that the firearm had never contained a bullet or a magazine. O'Quinn further stated that he always "kept it in a backpack" with jewelry and "kept [his] eye on it" so that it would not be stolen. He further admitted to driving the truck on the day in question and also confirmed that he left the vehicle to briefly walk into the woods "to take a whizz." O'Quinn also claimed that he was driving the truck with his wife's backpack in it because his wife was in North Carolina that day.

O'Quinn's father testified on behalf of his son. He stated that he had seen Lisa driving the truck in the days leading up to O'Quinn's arrest. He further testified that Lisa had called him on the day of the arrest and asked him to pick her and a friend up because the truck had broken down in the field. He also confirmed that as a result of the phone call he had picked up both Lisa and her friend from the field on that day.

In rebuttal, the Commonwealth played body camera footage of Investigator Samuels on the day of the arrest calling O'Quinn's father to ask if he could retrieve a car dolly attached to the truck located in the field. Investigator Samuels then gave O'Quinn's father directions to the field where the truck was located. The Commonwealth subsequently argued during closing that the father's failure to advise the investigator that Lisa had been driving the truck that day or that he had previously picked up Lisa from the field proved that he had been untruthful during his testimony.

Following closing arguments, the jury deliberated and convicted O'Quinn of possession of a firearm by a convicted violent felon. The trial court sentenced him to five years' imprisonment. O'Quinn appealed.

- 4 -

## II. ANALYSIS

### A. *Standard of Review*

"It is well-settled that decisions regarding the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." *Shahan v. Commonwealth*, 76 Va. App. 246, 255 (2022) (quoting *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021)). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Id.* at 256 (quoting *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022)).

### B. *Any error in the trial court's exclusion of evidence related to the weapon's operability is at most harmless.*

O'Quinn asserts that the trial court improperly excluded evidence he sought to introduce related to whether the firearm found by the investigators was in operable condition. However, assuming without deciding that the trial court erred, any such error would be harmless.

Relevant evidence is "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. Relevant evidence is generally admissible but may be excluded if "the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact; or" if "the evidence is needlessly cumulative." Va. R. Evid. 2:403.

O'Quinn was charged under Code § 18.2-308.2(A), which makes it unlawful for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm." To sustain a conviction under Code § 18.2-308.2(A), "the evidence need show only that a person subject to the provisions of the statute possessed an instrument which was designed, made, and intended to expel a projectile by

means of an explosion."[5] *Armstrong v. Commonwealth*, 263 Va. 573, 584 (2002). "It is not necessary that the Commonwealth prove the instrument was 'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm.'" *Id.*

Here, O'Quinn concedes that the operability of the firearm is not an element of the offense. Yet he argues, without supporting authority, that evidence "that the firearm was not operational would have tended to prove that [he] did not know the weapon was there" because "[n]aturally, a person is more likely to keep a functional item close at hand than one that does not work." We find that even if we were to accept O'Quinn's premise, any error in excluding the testimony was harmless.[6]

"[H]armless error review is required in all cases." *Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022); Code § 8.01-678. Non-constitutional error "is harmless if the appellate court 'can[] say, with fair assurance, . . . that the judgment was not substantially swayed by the error.'" *Tomlin*, 74 Va. App. at 410 (alterations in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 201 (2015)). And we can do so when "the evidence of guilt [is] so overwhelming that it renders the

---

[5] "For purposes of Code []§ 18.2-308.2 . . . a 'firearm' is an 'instrument . . . designed, made, and intended to expel a projectile by means of an explosion.'" *Davis v. Commonwealth*, 79 Va. App. 123, 142-43 (2023) (third alteration in original) (quoting *McDaniel v. Commonwealth*, 264 Va. 429, 429 (2002)). The defendant bears the burden to show the weapon had "lost its characteristics as a firearm" if he seeks to create reasonable doubt surrounding this element of the offense. *Kingsbur v. Commonwealth*, 267 Va. 348, 351 (2004) (holding that in viewing the evidence in the light most favorable to the Commonwealth, evidence adduced by the defendant showing "the handgun at issue could not be test fired, did not function, was missing parts, and 'came apart' in [the defendant's] hands when he first picked it up" was insufficient to overcome circumstantial evidence showing the defendant knew the handgun was dangerous in affirming his conviction under Code § 18.2-308.2). But O'Quinn does not raise this argument.

[6] "With respect to [O'Quinn's] assignment of error, we conclude that our determination that the error, if any, was harmless constitutes the best and narrowest ground" to resolve his appeal. *Castillo v. Commonwealth*, 70 Va. App. 394, 429 n.12 (2019); *Harvey v. Commonwealth*, 65 Va. App. 280, 285 n.2 (2015) ("As an appellate court, we seek 'the best and narrowest ground available' for our decision." (quoting *Armstead v. Commonwealth*, 56 Va. App. 569, 576 (2010))).

error insignificant by comparison such that the error could not have affected the verdict." *Kilpatrick*, 301 Va. at 217.

O'Quinn admitted during a recorded police interview that he knew of the firearm's presence. Indeed, he told the police that he always "kept [his] eye on it" so that it would not be stolen. And he did so while claiming that the gun never had ammunition—rendering it unable to fire. O'Quinn's own admissions, presented to the jury, are dispositive concerning his argument on appeal that he likely would have known about the firearm only if it were operable. *See, e.g.*, *Zektaw v. Commonwealth*, 278 Va. 127, 140 (2009) (holding that "inculpatory" statements are probative evidence that "ma[k]e the Commonwealth's case much stronger" in prosecuting an offense).

Moreover, O'Quinn's argument is also entirely reliant on *Investigator Sargent*'s testimony "that the firearm was not operational." However, his argument mischaracterizes the investigator's statement made prior to the Commonwealth's relevancy objection. In point of fact, Investigator Sargent actually testified that she did not know whether the gun was operational. Considering O'Quinn's recorded admissions and the fact that the firearm was in the driver's seat of a truck that he had recently been driving, we can say "with fair assurance" that excluding Investigator Sargent's equivocal testimony did not substantially sway the jury. *Cf. Jones v. Commonwealth*, 50 Va. App. 437, 450 (2007) ("[I]t is the province of the jury . . . to weigh the facts and to judge the credibility of the various witnesses." (alterations in original) (quoting *Ford v. Commonwealth*, 48 Va. App. 262, 268 (2006))). Accordingly, any alleged error O'Quinn asserts which resulted from the trial court sustaining the Commonwealth's objection was at most harmless error.[7]

---

[7] We, however, reject the Commonwealth's argument that O'Quinn procedurally defaulted his evidentiary argument by failing to proffer the evidence he wished to elicit. Although it is true that "we cannot competently determine error . . . without 'a proper showing of

III. CONCLUSION

For the foregoing reasons, assuming without deciding that the trial court erred in sustaining the Commonwealth's objection, any potential error arising therefrom would be harmless. Therefore, the trial court's judgment is affirmed.

*Affirmed.*

---

what that testimony would have been,'" *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006) (quoting *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 135 (1999)), we have such a showing here. After all, Investigator Sargent answered the question before the Commonwealth objected, demonstrating what the testimony would have been had the court not sustained the objection.